UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Reno-Tahoe Specialty, Inc., | ) |
| | ) |
| Plaintiff, | ) Case No.: 2:12-cv-01051-GMN-VCF |
| vs. | ) |
| | ) **ORDER** |
| Mungchi, Inc.; Top Design; and Kyung Su Lee, | ) |
| | ) |
| Defendants. | ) |

This is an action for copyright infringement and related claims. Pending before the Court is the Motion for Partial Summary Judgment (ECF No. 53) filed by Plaintiff Reno-Tahoe Specialty, Inc. ("Plaintiff" or "RTSI") against Defendant Mungchi, Inc. ("Mungchi"). Mungchi filed a Response (ECF No. 59), and an Errata (ECF No. 60), and Plaintiff filed a Reply (ECF No. 62). Subsequently, Mungchi filed a Sur-Reply (ECF No. 63) without requesting leave of the Court. Having first obtained leave, Plaintiff then filed its Sur-Reply (ECF No. 66).

**I. BACKGROUND**

Plaintiff initiated this action on June 20, 2012, with its Complaint (ECF No. 1) against Defendant Mungchi, to which Mungchi filed an Answer (ECF No. 19) along with third-party[1] claims against business entity Top Design and individual Kyung Su Lee. Plaintiff then filed an Amended Complaint (ECF No. 31) naming Top Design and Kyung Su Lee as additional Defendants, but with no changes to its claims against Defendant Mungchi.[2]

---

[1] At the time of filing of Mungchi's pleading, titled "Answer and Crossclaim" (ECF No. 19), Top Design and Kyung Su Lee had not yet been named as Defendants in Plaintiff's Amended Complaint (ECF No. 31); therefore Mungchi's claim against Top Design and Kyung Su Lee was erroneously designated as a crossclaim, instead of a third-party claim as governed by Rule 14 of the Federal Rules of Civil Procedure.

[2] The parties stipulated to permit Plaintiff leave to amend its pleading so as to name Top Design and Kyung Su Lee as defendants; and the Court so ordered, pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure. (Order, Jan. 18, 2013, ECF No. 30.) Mungchi did not file an amended pleading answering Plaintiff's Amended

1   Now before the Court is Plaintiff's motion requesting partial summary judgment in its
2   favor as to its claims against Mungchi arising under Title 17, United States Code, for copyright
3   infringement under the Copyright Act, and for removal or alteration of copyright management
4   information under the Digital Millenium Copyright Act. (Mot. Partial Summ. J., ECF No. 53.)

5   Plaintiff alleges that in or around 1997, it took pictures of various landmarks on the area
6   commonly known as the Las Vegas Strip, which it used to create an original artistic work
7   entitled the "695 View," a "true and accurate copy" of which is attached at Exhibit A. (Compl.,
8   2:¶6, ECF No. 1.)  Plaintiff alleges that at this time it began selling postcards of the 695 View
9   to gift shops in the Las Vegas area, and began including the 695 View in its yearly Las Vegas
10  calendars. (*Id*. at 2:¶8.)  Plaintiff alleges that "[o]ver time, [it] added the 695 View to many of
11  its 'hard' items, such as key chains, picture frames, ashtrays, snow globes, beach towels and
12  kitchen wares," and that the "695 View is its best-selling work." (*Id*. at 3:¶8.)

13  In December 1999, Plaintiff alleges that it obtained a U.S. copyright registration ("Reg.
14  No. VA 993-271") "in the 695 View," a "true and accurate copy" of which is attached as
15  Exhibit B, that depicts modifications to the original 695 View work, including the addition of
16  the "Mandalay Bay" resort hotel casino. (*Id*. at 3:¶9.)  In the same month, Plaintiff alleges that
17  it obtained a U.S. copyright registration ("Reg. No. VA 993-270") "on the 695 View in . . . cut-
18  out postcards," a "true and accurate copy" of which is attached at Exhibit C[3], that depict
19  modifications to the original 695 View work, including the addition of the "Walgreens" sign.

---

Complaint (ECF No. 31), and Plaintiff did not seek entry of default against Mungchi for failure to answer. Furthermore, Plaintiff did not attach the exhibits referenced in its Amended Complaint (ECF No. 31), in apparent reliance on the incorporation of its exhibits attached to its original Complaint (ECF No. 1).  Accordingly, the Court construes the parties' stipulation as acknowledgement that Mungchi's Answer (ECF No. 19) to Plaintiff's original Complaint (ECF No. 1) may serve as the required responsive pleading to the claims and allegations against Mungchi stated in Plaintiff's Amended Complaint (ECF No. 31). The Court reminds the parties that requests relating to the pleadings, any amendment, and any deadlines must be submitted to the Court in the form of a motion. *See* Fed. R. Civ. P. 7(b).

[3] The first page of Exhibit C appears to represent only the first page of the official Reg. No. VA 993-270, and the second page of Exhibit C appears to be the first page of an uncertified copy of what would become Reg. No. VA 993-270. (*See also* Ex. B to Gates Decl., ECF No. 53-1.)

(*Id.* at 3:¶10.)

In 2003, Plaintiff obtained an additional copyright registration for a 2003-2004 24-month calendar, a "Limited Collectors Edition," created in 2002 ("Reg. No. VA 1-198-412" Ex. C to Gates Decl.), which Plaintiff alleges incorporated the 695 View. (Compl., 3:¶¶11-12.) Plaintiff has submitted a "true and accurate copy of the 695 image" from this calendar at Exhibit E. (*Id.* at 3:¶12; *see also* Ex. B to Williams Decl., ECF No. 53-3.)

Plaintiff alleges that "[o]ver the past few years, [it] has updated the 695 View from time to time to add new images, including, but not limited to, THEhotel at Mandalay Bay, differently-angled shots of Bellagio, the Caesars Palace tower and Coliseum, The Mirage hotel tower, as well as the infamous 'Welcome to Las Vegas' sign." (*Id.* at 3:¶13.)

Plaintiff has submitted a "true and accurate copy" of its 2010 update to the 695 View ("the 2010 Version") at Exhibit F. (*Id.*; *see also* Ex. D to Gates Decl.)

Plaintiff identifies "intentional artistic changes" that "differ from the reality of the Las Vegas Strip," including: "the building sitting in the place of THEhotel at Mandalay Bay," which is "merely a copy of the left wing of the Mandalay Bay hotel image next to it," as shown by, "among other things, the duplication of the MANDALAY BAY name at the top of the building," and that "the real THEhotel at Mandalay Bay does not have the MANDALAY BAY name on it"; as well as "the Walgreens and CVS signs; the Statue of Liberty, which is not to scale; a blurred image of Stevie Nicks on the Caesars Palace marquee; and, the images of KA and Studio 54 on the MGM Grand marquee," none of which "would be visible in the sightline of a normal photo of the Las Vegas Strip taken from the angle in the 695 View." (Compl., 3-4:¶15.)

Plaintiff also alleges that "[a] copyright notice is displayed on the back of all [its] paper products and publications in which the 695 View appear, and on most hard items upon which the these [sic] images are place." (*Id.* at 4:¶16.)

Plaintiff alleges that, without its knowledge or consent, Mungchi has infringed upon Plaintiff's copyrights by "cop[ying] the 695 View, namely the 2010 version of the 695 View, into some storage medium," "manipulat[ing] copies of the 695 View to create derivative works for use on t-shirts," and selling products depicting an unauthorized reproduction of the 695 View. (*Id.* at 4:¶¶19-21, 5:¶¶23-24, 27.)

Plaintiff also alleges that, without its knowledge or consent, Mungchi intentionally removed the copyright management information from the 695 View, and distributed infringing products without authorization from Plaintiff. (*Id.* at 4-5:¶22.)

Plaintiff alleges that Mungchi continued to violate Plaintiff's copyrights even after cease and desist letters were sent to Mungchi by Plaintiff's counsel on February 7, 2008, and May 25, 2012 (*see id.* at Exs. H-I), and infringement was acknowledged by Mungchi in 2008 (*see id.* at Ex. J). (*Id.* at 5:¶¶23-27.)

Now, Plaintiff moves for summary judgment in its favor as to its copyright infringement claims and as to its claim for removal or alteration of copyright management information against Mungchi, arguing that there is no genuine dispute of material fact as to these claims. (Mot. Summ. J., ECF No. 53.) Plaintiff includes in its motion a statement of undisputed material facts pursuant to Rule II.56-1 of the Local Rules of Civil Practice for the District of Nevada[4] (*id.*); however Mungchi fails to include such a statement in its Response (ECF No. 59) or in any other briefing on the motion, and fails to specifically dispute any of Plaintiff's claimed undisputed facts.

These undisputed facts include the material allegations described above, and as stated in

---

[4] "Motions for summary judgment and responses thereto shall include a concise statement setting forth each fact material to the disposition of the motion, which the party claims is or is not genuinely in issue, citing the particular portions of any pleading, affidavit, deposition, interrogatory, answer, admission, or other evidence upon which the party relies." D. Nev. R. II.56-1. "The Court may, after notice and opportunity to be heard, impose any and all appropriate sanctions on an attorney or party appearing in *pro se* who, without just cause: . . . [f]ails to comply with these Rules." D. Nev. R. IA.4-1. Accordingly, the Court hereby gives notice to Mungchi's counsel of the failure to comply with Local Rule 56-1.

1   Plaintiff's Complaint, as well as the following facts relevant to Mungchi:

2       1. Mungchi owns and registered a trademark described as the "CHELONA"
3          trademark, No. 3,160,452, for which Mungchi manufactured, imported, sold, and
4          distributed clothing bearing the trademark.

5       2. Prior to the current lawsuit, Mungchi knew of Plaintiff, was familiar with
6          Plaintiff's merchandise, was aware of Plaintiff's copyrighted images, and had
7          infringed Plaintiff's copyright in the cover artwork for Plaintiff's 2008 limited
8          edition calendar.

9       3. The t-shirt depicted in Plaintiff's photo (Ex. G to Compl.) and any and all similar
10         t-shirts bear the CHELONA trademark, feature an image of the Las Vegas Strip;
11         and that in relation to these t-shirts, and without Plaintiff's knowledge or consent,
12         Mungchi: imported; manufactured; distributed; offered for sale; sold at least one;
13         caused to be manufactured by a third party; entered into an agreement or
14         agreements for manufacture, distribution and sale by and to a third party; and
15         distributed, offered for sale, and sold to and through at least one Walgreens store
16         located in Las Vegas, Nevada.

17  (*See also* Williams Decl., ECF No. 53-3; Order, June 18, 2013, ECF No. 50.)

18      Although not specifically cited in its Response (ECF No. 59), Mungchi appears to
19  contest the following facts asserted by Plaintiff:

20      1. The pictorial work appearing on Mungchi's t-shirts contains most, if not all, of
21         the unique designs contained in the 695 View.

22      2. Munchi's products are substantially similar to the 695 View, containing the exact
23         same artistic elements.

24      3. Munchi's products do not contain a copyright notice even though Plaintiff's 695
25         View does; therefore Mungchi removed the copyright management information

from the 695 View before copying it to create the products.

Mungchi argues that genuine issues of material fact exist as to: "whether the 'artistic enhancements' made to the subject image are sufficient to qualify it as an *original* artwork" and therefore whether Plaintiff owns a valid copyright in the image; whether any copied elements from Plaintiff's image were original elements of Plaintiff's image; and "whether any copyright information was removed prior to Mungchi's use of the allegedly copyrighted image." (*Id.* at 5:6-9, 6:8-10.)

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Rule 56(c) provides procedures for supporting or opposing a motion for summary judgment:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must

1  be made on personal knowledge, set out facts that would be admissible in evidence, and show
2  that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P.
3  56(c)(4).  "A party may object that the material cited to support or dispute a fact cannot be
4  presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
> (1)  give an opportunity to properly support or address the fact;
> (2)  consider the fact undisputed for purposes of the motion;
> (3)  grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or
> (4)  issue any other appropriate order.

Fed. R. Civ. P. 56(e).

At summary judgment, a court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.  The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-52.

"If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (internal citations omitted).  A dispute as to a material fact is genuine if, drawing all justifiable inferences in favor of the nonmoving party, there is sufficient evidence for a reasonable jury to return a verdict in the nonmoving party's favor. *Id.* at 249, 255; *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008).

**III. DISCUSSION**

In this action, and for the purpose of the instant motion, Plaintiff claims ownership of a copyright in the 695 View and seeks damages against Mungchi for copyright infringement.  In opposition, Mungchi denies infringing the copyright, argues that the copyright is invalid, and appears to assert as an affirmative defense that Mungchi made fair use of the work.

### A. The Copyright Act

Generally, under the Copyright Act, protection is given as of the date of creation, 17 U.S.C. § 302(a), to "original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device," 17 U.S.C. § 102. "Works of authorship" include original pictorial and graphic works, 17 U.S.C. § 102(5), as well as derivative works, 17 U.S.C. § 103(a).

Registration of a copyright claim with the United States Copyright Office is not a condition of copyright protection, but may be obtained by the owner of copyright or of any exclusive right in the work. 17 U.S.C. § 408(a). "In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c).

A copyright in a "derivative work extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material." 17 U.S.C. § 103(b). "The copyright in such work is independent of, and does not affect or enlarge the scope, duration, ownership, or subsistence of, any copyright protection in the preexisting material." 17 U.S.C. § 103(b).

Exclusive rights in copyrighted works are described in § 106, which provides that, subject to the limitations set forth in sections 107 through 122, the owner of copyright in original pictorial and graphic works has the exclusive rights to do and to authorize any of the following:

   (1) to reproduce the copyrighted work in copies or phonorecords;
   (2) to prepare derivative works based upon the copyrighted work; [and]
   (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending.

1  17 U.S.C. § 106.  "[T]he exclusive right to reproduce a copyrighted pictorial, graphic, or
2  sculptural work in copies under section 106 includes the right to reproduce the work in or on
3  any kind of article, whether useful or otherwise." 17 U.S.C. § 113(a).
4       Civil actions alleging violations of these exclusive rights in copyrighted works are
5  authorized under 17 U.S.C. § 501(a), (b).  Civil remedies are also available for removal or
6  alteration of copyright management information under § 1202(b), which provides that "no
7  person shall, without the authority of the copyright owner or the law . . . intentionally remove
8  or alter any copyright management information . . . knowing, or . . . having reasonable grounds
9  to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this
10 title." 17 U.S.C. § 1203.

11      **B. The Evidence Before the Court**

12      Plaintiff supports its motion with the declarations of its counsel and its President and
13 CEO, Gerald Gates. (ECF Nos. 53-1 – 53-3.)  As exhibits to the Gates declaration, Plaintiff
14 submits three certificates of registration from 1999 and 2003 for Plaintiff's copyrights in
15 materials depicting the 695 View, as well as a representation of a 2010 update to the 695 View.
16 (Exs. A-D to Gates Decl., ECF No. 53-1.)  As noted above, Plaintiff has submitted an
17 incomplete copy of the certificate for one of its 1999 U.S. copyright registrations ("Reg. No.
18 VA 993-270"). (*See id.* at Ex. B.)  With the declarations of its counsel, Plaintiff submits photos
19 of a calendar and t-shirt depicting the allegedly infringing material (Exs. B-C to Williams
20 Decl., ECF No. 53-3), as well as a 2008 cease and desist letter from Plaintiff to Mungchi and
21 Mungchi's response (Exs. A-B to Krieger Decl., ECF No. 53-2).
22      In opposition, Mungchi provides no additional evidence as to Plaintiff's claim of
23 infringement. (Response, ECF Nos. 59, 60.)
24      Instead, Mungchi produces the following evidence in support of its argument that a
25 genuine dispute of material fact exists as to whether any infringement was willful:

1
2
3
4
5
6
7
8
9

- an unauthenticated June 8, 2012, letter from Mungchi's counsel to Plaintiff's counsel in response to Plaintiff's May 25, 2012, cease and desist letter (*id.* at Ex. 1),
- an unauthenticated copy of a one-page fax of a page from a certificate of registration issued to Top Design for unpublished 2-D artwork, as certified by Kyung Su Lee, with an effective date of May 31, 2012 (*id.* at Ex. 5),
- an unauthenticated copy of an unsigned invoice dated March 12, 2012, from Top Design to Mungchi with a "PAID" stamp (*id.* at Ex. 5), and
- an sworn affidavit of Mungchi employee David Ham (Ex. A to Sur-Reply, ECF No. 63-1).

Citing these materials, along with the admissions of Mungchi as determined by the Court in its June 18, 2013, Order (ECF No. 50), Plaintiff argues that none of the admissible evidence shows a genuine dispute of material fact as to Mungchi's infringement of Plaintiff's copyrights and the removal or alteration of its copyright management information.

Discovery is now closed[5]; therefore the entirety of the evidence before the Court for consideration in determining the merits of the instant motion consists of the following: (1) Mungchi's admissions pursuant to Rule 36 of the Federal Rules of Civil Procedure[6]; (2) the declarations of Plaintiff's counsel and its President and CEO; (3) the affidavit of Mungchi employee, David Ham; (4) the three certificates of registration issued to Plaintiff[7]; (5) the two photos of a calendar and t-shirt depicting the allegedly infringing material[8]; (6) Plaintiff's

---

[5] As noted in the Court's June 18, 2013, Order (ECF No. 50), Plaintiff may request leave to conduct additional discovery upon the entry of this Order.
[6] These admissions were discussed and determined in the Court's June 18, 2013, Order (ECF No. 50).
[7] Certified copies of public records and documents that bear a seal purporting to be that of the United States and a signature purporting to be an execution or attestation are self-authenticating and require no extrinsic evidence of authenticity in order to be admitted. Fed. R. Evid. 902(1), (4); *see also* Fed. R. Evid. 1005 (copies of public records to prove content); Fed. R. Civ. P. 44(a)(1) (means of proving an official domestic record).
[8] In her Declaration, counsel for Plaintiff states under penalty of perjury that she took the photos. (Williams Decl., 2:¶¶6-7, ECF No. 53-3.)

representation of the 2010 update to the 695 View[9]; and (7) Plaintiff's 2008 cease and desist letter and Mungchi's response letter.[10]

At most, Mungchi addresses Plaintiff's allegation of willfulness with the Ham Affidavit and the unauthenticated evidence: the copy of a one-page fax of a page from a certificate of registration issued to Top Design for unpublished 2-D artwork, the unauthenticated copy of an unsigned 2012 invoice from Top Design, and the unauthenticated letter from Mungchi in response to Plaintiff's 2012 cease and desist letter.

Therefore, even considering Munchi's evidence, the Court finds that Mungchi has failed to produce any independent evidence to support its argument that a genuine dispute of material fact exists as to Plaintiff's copyright infringement claims or Plaintiff's claim for removal or alteration of its copyright management information.

Accordingly, the sole determination remaining for the Court is whether the evidence described above is sufficient to establish facts supporting each element of Plaintiff's claims. If so, the Court may grant summary judgment in favor of Plaintiff if the motion and supporting materials – including the facts considered undisputed – show that Plaintiff is entitled to it. As discussed below, despite the extreme lack of evidence to support Mungchi's assertions and arguments, the Court concludes that summary judgment cannot be granted.

### C. The Elements of Plaintiff's Claims

**1. Copyright Infringement**

To establish copyright infringement, a plaintiff must prove two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).

---

[9] In his Declaration, Plaintiff's President and CEO states under penalty of perjury that the exhibit is a true and accurate representation of the 2010 version of the 695 View. (Gates Decl., 3:¶11, ECF No. 53-1.)
[10] In his Declaration, Plaintiff's counsel states under penalty of perjury that he drafted and sent the 2008 cease and desist letter, and that he received Mungchi's response letter. (Krieger Decl., 1:¶4, 2:¶5, ECF No. 53-2.)

*a. Ownership of a Valid Copyright*

"In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c). "The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court." 17 U.S.C. § 410(c).

Here, the Court's review of the evidence does not reveal any copyright registration for the original 695 View work as described by Plaintiff in its Complaint. (*See* Compl., 2:¶6 & Ex. A.) The two complete copies of Plaintiff's 1999 and 2003 copyright registrations (Reg. Nos. 993-271, VA 1-198-412) appear, at most, to be for derivative works modifying the preexisting original 695 View work. (*See* Exs. A, C to Gates Decl.) Although the Court cannot fully rely on the incomplete copy of Plaintiff's 1999 copyright registration (Reg. No. 993-270), the Court finds no grounds on which to conclude differently for this registration. (*See id*. at Ex. B.) Furthermore, all three registrations indicate that the subject work was "work made for hire" as described under 17 U.S.C. § 101, which excludes from the definition of "work of visual art" any work made for hire. Therefore, at most, the Court could conclude that these registrations constitute prime facie evidence of Plaintiff's copyrights in the original elements of these registered works.

Nevertheless, the Court finds that Plaintiff has presented at least some evidence supporting its claims of ownership of a valid copyright in the 695 View and in its later modifications, through its authenticated exhibits and the sworn declarations of its counsel and its President and CEO. Plaintiff's evidence is most weak where it fails to show the original or comparable photos from which the original 695 View was created, and fails to provide any authenticated evidence of the works registered in 1999 or the original works on which these registrations were based.

1        In opposition, Mungchi fails to exploit this weakness, however; Mungchi provides no
2 evidence that Plaintiff's claims as to its copyright ownership are untrue, and provides no
3 evidence to support its arguments that Plaintiff's works are not original as compared to any
4 realistic depiction of the Las Vegas Strip or any other preexisting work.  The Court finds
5 unpersuasive and irrelevant all of Mungchi's arguments as to the impossibility of claiming
6 copyrights in realistic depictions of the Las Vegas Strip or the "Welcome to Las Vegas" sign,
7 because Plaintiff makes no such copyright claims.  Instead, Plaintiff's copyright claims are as
8 to its apparently unregistered copyright in the original 695 View artwork, and as to its
9 registered rights in original material contained in the apparently derivative works based upon
10 the original 695 View artwork.  Mungchi presents no evidence to support its assertion that the
11 works submitted to the Court by Plaintiff are not copyrightable.

12        Accordingly, regardless of whether Plaintiff's registrations constitute prima facie
13 evidence of the validity of Plaintiff's copyrights, Plaintiff has provided at least some evidence
14 of its copyright in the 695 View, and despite the deficiencies in Plaintiff's evidence, Mungchi
15 fails to present any evidence at all supporting its assertion that Plaintiff's ownership of a valid
16 copyright is a fact genuinely in dispute.

17        ***b. Copying***

18        "Because direct evidence of copying is not available in most cases," a plaintiff may
19 establish copying by showing: (1) that the defendant had access to the plaintiff's work; and (2)
20 "that the two works are 'substantially similar' in idea and in expression of idea." *Smith v.*
21 *Jackson*, 84 F.3d 1213, 1218 (9th Cir. 1996) (quoting *Apple Computer, Inc. v. Microsoft Corp.*,
22 35 F.3d 1435, 1439, 1442 (9th Cir. 1994)).  Where a high degree of access is shown, a lower
23 standard of proof of substantial similarity is required. *Swirsky v. Carey*, 376 F.3d 841, 844 (9th
24 Cir. 2004).  Despite this, summary judgment is disfavored on the substantial similarity issue in
25 copyright cases. *Funky Films, Inc. v. Time Warner Entm't Co., L.P.*, 462 F.3d 1072, 1076 (9th

Cir. 2006).

In some circumstances summary judgment may be appropriate in favor of a copyright defendant on the substantial similarity issue. *Id*. at 1077.  However, summary judgment in favor of a copyright plaintiff is not available on the substantial similarity issue because "[t]he substantial-similarity test contains an [objective] extrinsic and [subjective] intrinsic component." *Id*.  "At summary judgment, courts apply only the extrinsic test; the intrinsic test, which examines an ordinary person's subjective impressions of the similarities between two works, is exclusively the province of the jury." *Id*.; *see also Swirsky*, 376 F.3d at 845 ("For the purposes of summary judgment, only the extrinsic test is important because the subjective question whether works are intrinsically similar must be left to the jury.").

i. Access

The Court also finds no genuine dispute of material fact as to whether Mungchi had access to Plaintiff's work, primarily because Plaintiff sent Mungchi a copy of Plaintiff's work in its 2008 cease and desist letter and because Mungchi itself does not deny that it had access to Plaintiff's work.  This finding is bolstered by Plaintiff's 2012 cease and desist letter to Mungchi (Ex. H to Compl.) including a copy of the 2010 Version of the 695 View and Mungchi's apparent acknowledgement in its June 8, 2012 response (Ex. 1 to Response, ECF No. 59-1). Mungchi also presents no evidence or argument contesting the assertion that the 695 View is disseminated widely and on a variety of products bearing the 695 View offered for sale in stores throughout Las Vegas. (*See* Gates Decl., 3:¶¶14-17.)

ii. Substantial Similarity

The extrinsic test is objective, and depends on specific criteria that can be listed and analyzed. *Funky Films*, 462 F.3d at 1077.  Courts "'take care to inquire only whether the *protectable elements, standing alone*, are substantially similar.'" *Id*. (quoting *Cavalier v. Random House*, 297 F.3d 815, 822 (9th Cir. 2002)).  While Plaintiff presents adequate evidence

to support its argument that there is no genuine dispute of material fact as to the specific criteria differentiating the subject works, the Court cannot grant summary judgment on the issue of substantial similarity.

As noted above, where a copyright plaintiff requests summary judgment the Court does not apply the intrinsic test because this determination must be left to the jury. Accordingly, the Court finds Plaintiff's argument disingenuous in asserting that it "can satisfy both elements of its copyright infringement claim," and that "there is no genuine issue of material fact about the second element of [its] claim." (Mot. Partial Summ. J., 9:6-8.) Plaintiff's misrepresentation of this issue is most apparent in its incomplete and unquoted citation to the first half of this sentence from *Funky Films*, 462 F.3d at 1077: "At summary judgment, courts apply only the extrinsic test; the intrinsic test, which examines an ordinary person's subjective impressions of the similarities between two works, is exclusively the province of the jury." (*Id.* at 8:10-11.)

### *c. Damages for Willfulness*

Because the Court does not grant summary judgment as to Plaintiff's copyright infringement claims, the Court need not analyze the appropriate damages award or whether it may increase the statutory damages award upon a finding of willfulness. *See* 17 U.S.C. § 504(c)(2).

Likewise, the Court does not reach the issue of whether Mungchi may assert any affirmative defenses, such as those related to fair use and secondary liability, particularly where the pleadings may inadequately state such claims or defenses. *See* 17 U.S.C. § 107 (addressing fair use); 17 U.S.C. § 504(c)(2) (addressing innocent infringement); *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005) (discussing contributory and vicarious copyright infringement).

### 2. Removal or Alteration of Copyright Management Information

The Digital Millenium Copyright Act, 17 U.S.C. § 1201 *et seq.*, governs copyright

management information, and "§ 1202 deals with the removal of copyright information, an altogether different violation" from copyright infringement. *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 718-19 (9th Cir. 2004).  Among other elements, proof of removal or alteration of copyright management information requires evidence that a defendant committed one of the unlawful acts described in subsection (b)(1)-(3), "knowing, or, with respect to civil remedies under section 1203, having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title." 17 U.S.C. § 1202(b).

As evidence of this element, Plaintiff relies upon the Gates Declaration, the Williams Declaration, and its request for admissions and the Court's June 2013 Order (ECF No. 50) deeming certain requests as admitted, including the requests to admit that Mungchi distributed the t-shirt shown in Exhibit G to the Complaint, which bears the CHELONA trademark and not Plaintiff's copyright notice.

However, even with all the admitted requests, the Court cannot conclude that a reasonable jury, drawing all justifiable inferences in Mungchi's favor, would not return a verdict in Mungchi's favor.  This conclusion is particularly supported by the absence of any evidence as to the design of the t-shirts, and Mungchi's denials of Plaintiff's requests that Mungchi admit to creating, choosing, or approving the design of the t-shirts.  Accordingly, summary judgment is denied as to this claim.

### IV. CONCLUSION

**IT IS HEREBY ORDERED** that Motion for Partial Summary Judgment (ECF No. 53) is **DENIED**.

**DATED** this 10 day of February, 2014.

_____
Gloria M. Navarro, Chief Judge
United States District Court