**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| RENO-TAHOE SPECIALTY, INC., a Nevada corporation, | CASE NO. 2:12-cv-01051-GMN-VCF |
| Plaintiff, | **ORDER AND PERMANENT INJUNCTION** |
| vs. | |
| MUNGCHI, INC., a California corporation; TOP DESIGN, a California business entity; KYUNG SU LEE, an individual, | |
| Defendants. | |

The Court, having conducted a trial from the bench commencing on November 12, 2014, and ending on November 13, 2014, and having heard and received oral and documentary evidence, including the testimony of Mr. Gerald Gates ("Gates") on behalf of Plaintiff Reno-Tahoe Specialty, Inc. ("RTSI") and Mr. "Ricky" Seung Gon Noh ("Noh") on behalf of Mungchi, Inc. ("Mungchi"), having heard the argument of counsel, having considered the exhibits, the papers and pleadings on file herein, and all matters presented at the trial of this matter; and

Good cause appearing therefore, the Court hereby rules in favor of RTSI on its claims for copyright infringement, removal or alteration of copyright management information, and unfair competition under the Lanham Act,[1] and concludes as follows:

**FINDINGS OF FACT**

A.      Facts Relevant to RTSI and the 695 View

Plaintiff RTSI is a Nevada corporation in the business of producing and selling posters, postcards, souvenir books, and other souvenir merchandise.  Mr. Gates testified that he has been employed by RTSI for almost twenty (20) years, beginning initially as a warehouse employee and eventually become president and owner of the company, which occurred in 2011.  Much of RTSI's merchandise depicts attractions in and around Las Vegas, Nevada.

In or around 1997, RTSI took a number pictures of various landmarks on the area

---

[1]   RTSI voluntarily withdrew its claims for inference with contractual relations.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104685-001

1 of 22

commonly known as the Las Vegas Strip. Through the use of sophisticated computerized photo-editing and photo-enhancing software, RTSI collectively used these photographs to create an original artistic work entitled the "695 View."



(*See* Trial Ex. 1.) The 695 View is not an accurate representation of the Las Vegas Strip landmarks; rather, the work contains numerous artistic choices, changes and enhancements to fictionalize the landmarks. In or around 1997, RTSI began selling postcards of the 695 View to numerous gift shops in the Las Vegas area. It also began including the 695 View in its yearly Las Vegas calendars. Over time, RTSI also added the 695 View to many of its "hard" items, such as key chains, picture frames, ashtrays, snow globes, and clothing. Mr. Gates testified that the 695 View immediately became RTSI's best-selling work of art and that it continued to be its best selling work for almost the past two decades.

As new resort hotel casinos were built on the Las Vegas Strip, RTSI modified the 695 View from time to time to include these physical changes to the Las Vegas Strip. In December 1999, RTSI modified the 695 View, adding, *inter alia*, the Mandalay Bay Hotel and Casino, the Eiffel Towner, the Bellagio water show, as well as other artistic enhancements, such as the colors and tones of the work.



Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104685-001

(*See* Trial Ex. 2.)  RTSI timely obtained a valid U.S. copyright registration on the original 1999 version of the 695 View (Reg. No. VA 993-271).  (*See* Trial Ex. 3.)

That same year RTSI further modified the 695 View adding, *inter alia*, the Walgreens sign, the Paris Hotel and Casino hot air balloon, the Bally's Hotel and Casino signage, and further enhancing the colors and tones, as well as the resolution (e.g., clarity and/or DPI) of the work.



(*See* Trial Ex. 4.).  RTSI place this updated 1999 version of the 695 View on various products in celebration of the new millennium.  RTSI timely obtained a valid U.S. Copyright Registration on this modified 1999 version of the 695 View (Reg. No. VA 993-270).  (*See* Trial Ex. 5.)

In or around 2002, RTSI continued to modified the 695 View to create its 24-Month Calendar—Limited Collectors' Edition ("Limited Collector's Edition Artwork"), beginning with a 2003-2004 Collector Edition two year calendar.

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104685-001

1   (*See* Trial Ex. 6.)  The Limited Collector's Edition Artwork incorporated a number of images,

2   which included this updated version of the 695 View.   In or around July 2003, RTSI timely

3   obtained a valid U.S. copyright registration on its calendar which contained this updated version

4   of the 695 View found in the Limited Collector's Edition Artwork (Reg. No. VA 1-198-412).

5   (*See* Trial Ex. 8.)  This 2003 version of the 695 View includes many Las Vegas landmarks,

6   signs, and buildings that are uniquely positioned and superimposed next to each other to create

7   an image that, geographically, is not an accurate rendition of the Las Vegas Strip.  For instance,

8   the Excalibur Hotel and Casino is re-positioned so that the identifiable features of the property—

9   its red and blue cones—are readily visible, and many of these landmarks, signs and buildings are

10  re-angled and re-positioned towards the viewer of the 695 View, as opposed to their natural

11  position facing The Las Vegas Strip.  Importantly, none of these images are visible in the

12  sightline of a normal photo of The Las Vegas Strip taken from the angle in the 695 View.   RTSI

13  further enhanced the colors and tones, as well as the resolution (e.g., clarity or DPI) of this

14  version of the 695 View.  RTSI continued to use 2003 version of the 695 View on a number of

15  souvenir products and it remained RTSI's best-selling work of art.

16      Over the next few years, RTSI continued to modify and update the 695 View, adding

17  some additional enhancements, including, THEhotel at Mandalay Bay, the Walgreens and CVS

18  signs, the Statue of Liberty, a blurred image of Stevie Nicks on the Caesars Palace marquee, the

19  images of KA and Studio 54 on the MGM Grand marquee, the infamous "Welcome to Las

20  Vegas" sign, as well as differently-angled shots of the Bellagio, the Caesars Palace tower and

21  Coliseum, and The Mirage hotel tower. One such update to the 695 View occurred in 2010.



22

23

24

25

26

27

28

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104685-001

1

2     (*See* Trial Ex. 10.)  Similar to the 2003 version, none of the images contained in the 2010 version

3     of the 695 View would be visible in the sightline of a normal photograph of the Las Vegas Strip

4     taken from the angle of the 695 View.[2]

5         RTSI has sold, and continues to sell, a significant number of souvenir products bearing

6     the 695 View, including, but not limited to, key chains, picture frames, insulated mugs, snow

7     globes, oven mitts, can coolers, compact mirrors, tote bags, cosmetic purses, coin purses, savings

8     banks, pencil kits, wine bottle gift sets, pillows, shot glasses, playing cards, flasks, baseballs,

9     placemats, coffee mugs, lanyards, and even can holders.  (*See* Trial Exs. 11-33.)  These products,

10    along with many others bearing the 695 View, are sold throughout Las Vegas at various souvenir

11    shops, including six (6) Walgreens stores located on and/or in close proximity to Las Vegas

12    Boulevard identified at trial.  Mr. Gates testified that at these six (6) Walgreens stores, RTSI's

13    souvenirs bearing the 695 View occupy anywhere from five (5) to forty (40) feet of retail space

14    within each store, as well as being displayed on fixtures and other areas throughout the stores,

15    which may be as much as twenty five (25%) percent of the aisles in these Walgreens stores.

16    Moreover, a copyright notice is displayed on the back of all RTSI paper products and

17    publications, and on each of the souvenir products, on which the 695 View is placed.  (*Id.*)

18        B.    Facts Relevant to Defendants

19        Defendant Mungchi is a California corporation with its principal place of business in Los

20    Angeles, California, and is in the business of manufacturing, distributing, and selling souvenir

21    merchandise and clothing throughout Las Vegas, Nevada, and has done so for nearly a decade.

22    It is undisputed that Mungchi and RTSI are both involved in the souvenir merchandise business

23    and are competitors in the Las Vegas souvenir market.

24        Mr. Noh, who is the president and owner of Mungchi, testified that Mungchi regularly

25    does business with Defendants Top Design and Kyung Su Lee.  Mr. Noh testified that Mungchi

26    and Top Design have done business together for years and that they continue to do so.  Mr. Noh

27

28

---

[2]   Although not at issue, RTSI recently obtained a registration on its 2012 version of the 695 View.  (Trial Ex. 48.)

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104685-001

confirmed that he is responsible for the approval of all designs that appear on Mungchi's t-shirts bearing the CHELONA mark.  And, he also testified that both he and his employees make regular visits to retail outlets in Las Vegas where Mungchi's products are sold, which include the six Walgreens stores located on and/or near The Las Vegas Strip, and have done so for the past several years.  Mr. Noh stated that he would visit the Walgreens stores in question at least once a quarter, but confirmed that his sales associates visited the stores at least once a week.

Mungchi does not deny it was involved in the selection, creation, manufacture, distribution, and sale of a t-shirt bearing a design that is practically identical to the 695 Work ("the Infringing T-Shirt).



(*See* Trial Ex. 34.)  Mungchi did not offer any evidence or testimony at trial that it made any attempt to determine whether the design was subject to copyright and/or that the image was available for use prior to placing the order with Top Design or before distributing and selling it to the Walgreens stores in question.  The evidence presented at trial confirmed that 193 t-shirts had been sold to these Walgreens stores.  The total amount of net sales in dollars received by Mungchi through the sale and distribution of the Infringing T-shirt was approximately $1,350, which is the sales amount ($1,930) minus the cost ($580).  (*See* Trial Exs. 35-41.)

On or about May 25, 2012, RTSI, through counsel, sent a cease-and-desist letter to Mungchi informing it that the Infringing T-Shirt was identical to the 695 View and that it

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104685-001

immediately stop distributing and selling the t-shirt.  (*See* Trial Ex. 42).  On or about June 8, 2012, Mungchi's counsel responded to RTSI's demand letter questioning RTSI's rights in the image and giving no indication that Mungchi would cease its conduct.  (*See* Trial Ex. 43.) Although there is some discrepancy as to the date when Mungchi may have actually notified Top Design and Kyung Su Lee of RTSI's claims for infringement, it is clear from the testimony provided by Mr. Noh at trial that he did not contact Top Design and/or Kyung Su Lee until after receiving the cease-and-desist letter from RTSI.  Mungchi attempted to rely upon an incomplete copyright registration certificate purportedly received from Top Design that allegedly demonstrated ownership of a copyright in the Infringing T-Shirt design, the "effective date" of the registration is May 31, 2012.  (*See* Trial Ex. 503)  The Court takes judicial notice of the fact that "effective date" of a registration is date upon which the application for the registration was submitted to the Copyright Office, which in this case, is after RTSI notified Mungchi of the infringement.

Importantly, this is not the first time Mungchi has infringed upon RTSI's copyrighted works.  In February 2008, RTSI, through counsel, sent a cease-and-desist letter to Mungchi regarding its infringement RTSI's copyright in the cover artwork for RTSI's Limited Collector's Edition Artwork. (*See* Trial Ex. 44.)  In response, Mungchi agreed to stop any further sales and inquired into the possibility of future licensing of RTSI's artwork.  (*See* Trial Ex. 45.)  Mungchi offered no evidence at trial that it followed through on the inquiry or that it did anything further to avoid using RTSI's copyrighted works in the future.  Moreover, Mr. Gates testified at trial that the calendar in question contained the 695 View.

Mr. Gates testified that RTSI has never authorized Mungchi to use its copyrighted works, including the 695 View, in any way.

Per this Court's June 16, 2013 order (Doc. 50), the following admissions propounded upon Mungchi during discovery by RTSI were deemed admitted for purposes of trial:

a.     Mungchi is the owner of the CHELONA trademark, under which it manufactures, imports, offers for sale, sells and distributes clothing bearing the CHELONA trademark;

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104685-001

b.      As part of its clothing line, Mungchi manufactures, imports, offers for sale, sells and distributes t-shirts bearing the CHELONA trademark;

c.      The t-shirt shown in Trial Exhibit 34 bears the CHELONA trademark (referred to herein as the "Infringing T-Shirt");

d.      Mungchi manufactured and distributed the Infringing T-shirt;

e.      Mungchi purchased and imported the Infringing T-shirt from Top Design;

f.      Mungchi caused the Infringing T-shirt to be manufactured by a Top Design;

g.      Mungchi entered into an agreement or agreements for the manufacture of the Infringing T-shirt by Top Design;

h.      Mungchi entered into an agreement or agreements for the distribution of the Infringing T-shirt by Top Design;

i.      Mungchi distributed the Infringing T-shirt through at least one Walgreens store located in Las Vegas, Nevada.

j.      Mungchi distributed the Infringing T-shirt to at least one Walgreens store located in Las Vegas, Nevada;

k.      Mungchi offered for sale the Infringing T-shirt;

l.      Mungchi offered for sale the Infringing T-shirt through at least one Walgreens store located in Las Vegas, Nevada;

m.      Mungchi sold the Infringing T-shirt;

n.      Mungchi sold at least one Infringing T-shirt;

o.      Mungchi sold the Infringing T-shirts through at least one Walgreens store located in Las Vegas, Nevada.

p.      Mungchi had a pecuniary interest in the manufacturer, distribution and sell of the Infringing T-shirt;

q.      Mungchi entered into an agreement or agreements for the sale of the Infringing T-shirt by Top Design;

r.      Mungchi entered into an agreement or agreements for the sale of the

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104685-001

1  Infringing T-shirt to Top Design;

2          s.      The Infringing T-shirt was displayed to the public;

3          t.      Mungchi displayed the Infringing T-shirt to the public;

4          u.      Mungchi caused the Infringing T-shirt to be displayed to the public;

5          v.      Mungchi acted willfully in the manufacture, distribution, sale and public

6  display of the Infringing T-Shirt displaying RTSI's 695 View;

7          w.      Mungchi had access to RTSI's copyrighted works, including the 695

8  View.

9          The parties also agreed in their joint pre-trial order that the following facts are

10  undisputed:

11          1.      Mungchi has no reason to believe that the image displayed on the Infringing T-

12  shirt, which it manufactured, distributed and sold, was not a copy of RTSI's 695 View.

13          2.      Mungchi admits that it manufactured, distributed and sold the Infringing T-shirt to

14  gift stores throughout Las Vegas, including at least one of the same gift stores where RTSI sells

15  its merchandise containing the 695 View.

16          3.      Mungchi admits that it manufactures, distributed, and sold the Infringing T-shirt

17  without the knowledge or consent of RTSI.

18          4.      Mungchi possessed the right and ability to supervise the infringing conduct and

19  chose not to exercise that right and ability.

20          5.      The Infringing T-shirt does not contain a copyright notice even though RTSI's

21  695 View does contain such a notice.

22          6.      Mungchi had the requisite knowledge to know that the copyrighted management

23  information was removed from RTSI's 695 View.

24  (Doc. 100.)

25  **CONCLUSIONS OF LAW**

26          A.      RTSI's Copyright Infringement Claims

27          The Copyright Act of 1976 provides that an owner of a copyrighted work has the

28  exclusive right to reproduce, prepare derivative works based on, publicly distribute copies, and

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104685-001

9 of 22

publically display the work.  17 U.S.C. § 106.  "Anyone who violates <u>any</u> of the exclusive rights of the copyright owners as provided by sections 106 through 118 … is an infringer of the copyright."  17 U.S.C. § 501(a) (emphasis added).  "Because direct evidence of copying is not available in most cases," RTSI may establish copying by showing: (1) that the defendant had access to the plaintiff's work; and (2) "that the two works are 'substantially similar' in idea and in expression of idea." *Smith v. Jackson*, 84 F.3d 1213, 1218 (9th Cir. 1996) (quoting *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1439, 1442 (9th Cir. 1994)).

RTSI owns three (3) valid federal copyright registrations for the 695 View that are at issue, including Registration Nos. VA 993-270 (1999 version), VA 993-271 (1999 Millennium version), and VA 1-198-4121 (2003 version), as well as common law rights in the 695 View. These registrations constitute prima facie evidence of the validity of RTSI's copyright and ownership. 17 U.S.C. § 410(c).  Although RTSI does not have a federal registration on either its original 1997 version or the 2010 version of the 695 View, it is still entitled to copyright protection.  This Court has already held that RTSI copyright registrations are valid.  (Doc. 76.)

To successfully prove "access," a plaintiff must show a reasonable possibility that an alleged infringer had the chance to view the protected work.  *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 481 (9th Cir. 2000).  Here, there is no dispute Mungchi had access to the 695 View.

To determine whether an infringing work is "substantially similar" to a work entitled to copyright protection, the Court must apply the Ninth Circuit's two-part "extrinsic/intrinsic" test. *Mattel v. MGA Entm't, Inc.*, 616 F.3d 904, 913 (9th Cir. 2010).

<u>First</u>, the extrinsic test is objective, and depends on specific criteria that can be listed and analyzed. *Funky Films, Inc. v. Time Warner Entm't Co., L.P.*, 462 F.3d 1072, 1077 (9th Cir. 2006).  The extrinsic test looks to analytically dissect and break down the copyrighted work and the infringing work "into their constituent elements, and compare those elements for proof of copying as measured by 'substantial similarity.'" *Benay v. Warner Bros. Entm't*, 607 F.3d 620, 624 (9th Cir. 2010) (*citing Swirsky v. Carey*, 376 F.3d 841, 844 (9th Cir. 2004)). In analyzing pictorial works under the extrinsic test, the Ninth Circuit also looks to the "shapes, colors and

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104685-001

arrangement of the representations" contained within the two works.  *Cavalier v. Random House, Inc.*, 297 F.3d 815, 826 (9th Cir. 2002).  Importantly, when employing the extrinsic test in connection with pictorial works, the Ninth Circuit extends more discretion to judges when listing and analyzing the objective criteria.  *See id.*

The Court finds that the Infringing T-Shirt is clearly substantially similar to the 695 View.  The Infringing T-Shirt is most similar to the 2010 version of the 695 View, although that version is not subject to a registration.  However, when comparing objective criteria between RTSI's registered 1999 and 2003 versions of the 695 View with the Infringing T-Shirt, they are virtually identical, *but for* the addition of a few landmarks that were updated and included in the 2010 version, including the Paris Hotel and Casino hot air balloon marquee and Eiffel Tower, the Statute of Liberty before the New York New York Hotel and Casino, THEHotel Tower adjacent to the Mandalay Bay, the Flamingo Hotel and Casino sign and marquee, and the infamous "Welcome to Las Vegas sign," as well as a repositioning of The Bellagio and removal of the Treasure Island sign.

The image on the Infringing T-Shirt contains minor and non-substantive changes to the 695 View.  The identifiable differences include a blurrier and repositioned "Welcome to Las Vegas sign," the addition of fireworks and the words "Las Vegas," and a change in the background color from white to black, as well as slight cropping of the outer-most parts of the 695 View (including the section containing RTSI's copyright notice).  Notwithstanding these minor changes, when compared side-by-side, RTSI's 1999 and 2003 versions of the 695 View and the Infringing T-Shirt are the exactly the same.

The entire composition of the 695 View is duplicated exactly in the Infringing Works -- the buildings are in the same place, in the same relationship to each other, in the same orientation, with the exact same details.  Importantly, none of these images would be visible in the sightline of a normal photograph of the Las Vegas Strip taken from the angle in the 695 View; however, each of these artistic additions and enhancements contained within the 695 View are also contained within the image on the Infringing T-Shirt.  Further, the image on the Infringing T-Shirt incorporates the exact same color schemes, tones and highlights as the 695

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104685-001

1    View.  It is nothing less than an example of a "cut and paste" in its rawest form.

2        Accordingly, and under the objective extrinsic test, the 695 View and the Infringing T-

3    Shirt are substantially similar for purposes of establishing copyright infringement.

4        Second, the intrinsic test is a subjective comparison that focuses on whether the ordinary,

5    reasonable audience would find the works substantially similar in the 'total concept and feel' of

6    the work." *Cavalier*, 297 F.3d at 822.  The *trier of fact* is required to ask whether an ordinary,

7    reasonable observer would consider the copyrighted work and accused works virtually identical

8    (or substantially similar).  *Id.*  The Ninth Circuit has recognized that the intrinsic test is not more

9    than the visceral reaction of the lay observer, and is "virtually devoid of analysis."  *Shaw v.*

10   *Lindheim*, 919 F.2d 1353, 1357 (9th Cir. 1990).

11       After examining the total concept and feel of each of the works, the Court finds that

12   subjectively the Infringing T-Shirt and the 695 View are the same and practically identical.

 

22   Moreover, because Mungchi's Infringing T-Shirt and RTSI's products bearing the 695 View

23   were displayed and offered for sale in the same stores, there is doubt that a consumer would

24   assume that all products were created by the same manufacturer and that the consumer would

25   have to choose one over the other.

26       Copyright infringement is a strict liability tort and any entity in the chain of distribution

27   is liable.  The copyright owner need not prove knowledge or intent on part of the defendant to

28   establish liability for direct copyright infringement.  17 U.S.C. § 504(c).  Here, Mungchi has

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104685-001

admitted it manufactured (or caused to be manufactured), imported, distributed, offered for sale, and publically displayed the Infringing T-Shirt.  Accordingly, Mungchi is liable for copyright infringement.

B.   RTSI's Contributory Copyright Infringement Claim

Contributory liability arises when a party is "in a position to control the use of copyrighted works by others and [has] authorized the use without permission from the copyright owner." *Sony Corp. v. Universal City Studios, Inc.*, 464 U.S. 417, 437 (1984). In other words, contributory infringement arises where a defendant has knowledge of the infringing conduct and facilitates the means by which the direct infringement is accomplished.  William F. Patry, 6 PATRY ON COPYRIGHT § 24:41 (2014 ed.)  *See also A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1019 (9th Cir. 2001) ("[O]ne who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another, may be held liable as a contributory infringer.").

Here, Mungchi knew (or had reason to know) that image placed on the Infringing T-Shirt was substantially similar to RTSI's 695 View, and RTSI's right to create derivative works when it directed Top Design to design and create the Infringing T-Shirt.  (*See* Trial Ex. 49 at 67-69.) Mr. Noh testified that he received various designs from Top Design and exercised the sole discretion and authority in deciding which designs to purchase for placement on Mungchi's t-shirts.  Mungchi attempted to claim that Top Design was solely responsible for the infringement, but the Court finds Mr. Noh's testimony unpersuasive and difficult to believe, particularly his testimony that no documentation existed and that no questions were asked of Top Design because it would be offensive to do so.  Mungchi knew or should have known that the image to be included on the Infringing T-Shirt was substantially similar to, or nearly identical to RTSI's 695 View, which was being sold in the same stores and occupying substantial aisle space.

Because Mungchi induced, caused, or materially contributed to the infringement of RTSI's 695 View, this Court finds that Mungchi is contributorily liable.

C.   Mungchi is Liable for Vicarious Infringement

Vicarious liability arises when a defendant possesses the right and ability to supervise

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104685-001

1   infringing conduct and has a direct financial interest in such activities.  3 Nimmer, NIMMER ON

2   COPYRIGHT, § 12.04[A][1].  "Lack of knowledge that the primary actor is actually engaged in

3   infringing conduct is not a defense."  *Id.*  Where a defendant is in a position to police the

4   infringing conduct," its "failure to police the conduct" gives rise to vicarious liability.  *Gershwin*

5   *Publ'g Corp. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162-63 (2d Cir. 1971).  "To escape

6   imposition of vicarious liability, the reserved right to police must be exercised to its fullest

7   extent.  Turning a blind eye to detectible acts of infringement for the sake of profit gives rise to

8   liability."  *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1023 (9th Cir. 2001).

9   Furthermore, the "financial benefit" element is satisfied where infringing activity "acts as a draw

10  for customers."  *A&M Records*, 239 F.3d at 1023 (quoting *Fonovisa, Inc. v. Cherry Auction, Inc.*,

11  76 F.3d 259, 263-64 (9th Cir. 1996) (infringing activities "enhance the attractiveness of the

12  venue to potential customers")).

13        Mungchi had the right and ability to supervise the infringing activity, and it maintained

14  final approval over all of the merchandise that it sold.  (*See* Trial Ex. 49 at 64-67.)  Mungchi

15  "turned a blind eye" and failed to exercise its right to police to the "fullest extent possible."  For

16  example, there is no evidence that there was any attempt on part of Mungchi to determine

17  whether its purchase of the infringing image from Top Design would be a problem or whether

18  there were any rights or licenses that needed to be obtained.  Rather, Mungchi selected the image

19  to appear on the Infringing T-Shirt; had the opportunity to review and evaluate the product prior

20  to selling it; and had a direct financial interest in the creation of the Infringing T-Shirt for sale to

21  its retail outlets in Las Vegas, Nevada. Mungchi admits, and this Court finds, that Mungchi had a

22  pecuniary interest in the manufacturer, distribution and sale of the Infringing T-Shirt.

23        Mungchi is therefore vicariously liable for the infringement because it turned a blind eye

24  to detectible acts of infringement for the sake of profit.

25        D.        Mungchi is Liable for Willful Copyright Infringement

26        To successfully prove "willfulness" in the copyright context, a plaintiff need only to

27  show that "(a) that the defendant was actually aware of the infringing activity, or (b) that the

28  defendant's actions were the result of 'reckless disregard' for, or 'willful blindness' to, the

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104685-001

14 of 22

1  copyright holder's rights." *Washington Show Co. v. A-Z Sporting Goods, Inc.*, 704 F.3d 668,

2  674 (9th Cir. 2012). Stated differently, a finding of "willfulness" under the Copyright Act can be

3  based on either "intentional behavior," or "merely reckless behavior." *Id.* (internal quotations

4  and citations omitted) (*citing Archlightz & Films Pvt. Ltd. v. Video Palace Inc.*, 303 F. Supp. 2d

5  356, 361-62 (S.D.N.Y. 2003) ("To prove willfulness, plaintiffs must show that the infringer had

6  actual or constructive knowledge that it was infringing the plaintiff's copyrights or else acted in

7  reckless disregard of the high probability that it was infringing plaintiffs' copyrights.")).

8  Importantly, and for purposes of establishing willfulness, "evidence that notice had been

9  accorded to the alleged infringer is perhaps the most persuasive evidence of willful."

10  *Washington Shoe*, 704 F.3d at 674 (*quoting Chi-Boy Music v. Charlie Club Inc.*, 930 F.2d 1224,

11  1227 (7th Cir. 1991)).

12      Mungchi was on notice of RTSI's rights in the 695 View and had previously infringed

13  RTSI's copyrighted works. Specifically, in 2008, RTSI placed Mungchi on notice that RTSI

14  owned copyrights in images placed on its products. (*See* Trial Ex. 44.) Although the work at

15  issue in 2008 was the cover of a limited edition calendar, the calendar contained the 2003 version

16  of the 695 View and it can be reasonably implied that Mungchi received a copy of the 695 View

17  at that time.

18      Additionally, Mr. Noh's testimony that both he and his employees frequently visited the

19  same Walgreens stores at issue on or close to The Las Vegas Strip is especially troubling. The

20  fact that Mungchi sold its products, including the Infringing T-Shirt, in the same stores where

21  RTSI's souvenir products bearing the 695 View were located and occupied upwards of forty (40)

22  linear feet of aisle space and twenty five (25%) percent of the total retail space, often in close

23  proximity to RTSI's products, and had done so for many years, is incredible proof in stark

24  contradiction to Mr. Noh's testimony. It strains credulity to believe that Mr. Noh and his

25  employees were unaware of the 695 View until Mungchi received RTSI's May 25, 2012 cease-

26  and-desist letter.

27      Moreover, Mungchi failed to offer any evidence that it took any affirmative action to

28  ascertain whether its purchase and use of the image from Top Design on the Infringing T-Shirt

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104685-001

15 of 22

1   would violate another's copyright, or whether Top Design had properly secured the rights.  Mr.

2   Noh's testimony that there was no such documentation, and that any inquiry seeking such

3   documentation would be "offensive" is suspect and without merit.

4          In light of the foregoing, this Court finds that Mungchi's infringement of the 1999 and

5   2003 versions of the 695 View was willful.

6          E.      RTSI Is Entitled to Maximum Statutory Damages

7          The Copyright Act allows recovery of statutory damages in lieu of actual damages and

8   defendant's profits.  Section 504(c) of the federal Copyright Act provides, in pertinent part, that

9   "where the copyright owner sustains the burden of proving and the court finds, that the

10   infringement was committed **willfully**, the court in its discretion may increase the aware of

11   **statutory damages to a sum of not more than $150,000**." (emphasis added).  Statutory damages

12   serve to sanction and vindicate the statutory policy of discouraging infringement.  *Los Angeles*

13   *News Service v. Reuters Television Intern.*, 149 F.3d 987, 996 (9th Cir. 1998), *cert. denied* 535

14   U.S. 1141 (1998).   When infringement is willful, statutory damages should be designed to

15   penalize the infringer and to deter future violations.  *Nintendo of America, Inc. v. Dragon Pacific*

16   *Intern.*, 40 F.3d 1007, 1011 (9th Cir. 1994).   Moreover, statutory damages are recoverable

17   regardless of the adequacy of the evidence offered as to actual damages and the amount of the

18   defendant's profits.  *Harris v. Emus Records Corp*, 734 F.2d 1329 (9th Cir. 1984).

19          District courts have broad discretion in setting the amount of statutory damages within

20   the minimum and maximum amounts prescribed by the Copyright Act.   *National Football*

21   *League v. PrimeTime 24 Joint Venture*, 131 F. Supp. 2d 458, 472 (S.D.N.Y. 2001); *see also*

22   *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 345-46, (1998) ("'the court in its

23   discretion' may, within limits, increase or decrease the amount of the statutory damages").

24   Many factors influence an award of statutory damages for copyright infringement, including the

25   expenses saved and the profits earned by the defendant, the expense saved by defendant by

26   avoiding a license agreement, revenues lost by the plaintiff, the deterrent effect that such an

27   award will have on the defendant and on third parties, the defendant's state of mind, and the goal

28   of discouraging wrongful conduct.  *National Football League*, 131 F. Supp. 2d at 473-74; *Sony*

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104685-001

16 of 22

1   *Computer Entm't. America, Inc. v. Filipiak*, 406 F. Supp. 2d 1068, 1074-1075 (N.D. Calif.

2   2005).  Willfulness in the context of statutory damages for copyright infringement means that the

3   infringer either had actual or constructive knowledge that it was infringing the plaintiffs'

4   copyrights or else acted in reckless disregard of the high probability that it was infringing

5   plaintiffs' copyrights. *National Football League*, 131 F. Supp. 2d at 475.

6   Mungchi was on notice of RTSI's rights in the 695 View and had previously infringed

7   RTSI's copyrighted works.  Mungchi admits, and this Court finds, that it had prior knowledge of

8   RTSI's 695 View.  Mungchi's willful or reckless disregard for RTSI's copyrights, particularly

9   given the pervasiveness of the 695 View in the marketplace, as well as the repeated violations,

10   demands the maximum amount in statutory damages be awarded to RTSI to deter future

11   infringement of its copyrights.   Moreover, Mungchi has consistently ignored established

12   copyright law and taken unreasonable positions throughout this litigation, needlessly driving up

13   the cost of litigation.

14   Mungchi's "innocent infringement" defense to a finding of willfulness is unavailing.  A

15   defendant's burden of proving innocent infringement has been described as "a heavy one"; an

16   innocent infringer must prove that it was not aware and had no reason to believe that its acts

17   constituted infringement.  *National Football League*, 131 F. Supp. 2d at 476. Even for an

18   innocent defendant, the court may still choose to award damages up to the statutory maximum

19   amount.  *Id*.  It is not sufficient for a defendant merely to claim that it is innocent.  *Id*.  Although

20   Mungchi attempts to "pass the buck" under the auspices that Top Design actually created the

21   Infringing T-Shirt, Mungchi chose the image, and then later distributed, offered for sale and

22   publicly displayed the Infringing T-Shirt in the same retail locations as RTSI's 695 View

23   merchandise was located.

24   Due to Mungchi's willful infringement of RTSI's copyrights in the 695 View, this Court

25   finds that an award of the maximum statutory damage amount of $150,000 is appropriate.

26   F.   RTSI's Removal or Alteration of Copyright Management Material Claim

27   To establish a violation of the Digital Millennium Copyright Act, a plaintiff must *first*

28   show that it placed copyright management information on its copyrighted work and copies of its

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104685-001

works, and *second*, that a defendant intentionally removed such copyright management information or, alternatively, distributed copies of works knowing that the copyright management information had been removed without plaintiff's authorization.   17 U.S.C. § 1202(b).

Here, it is undisputed that all versions of the 695 View contained a copyright notice, which most often appears on the right side of the image.  As stated above, Mungchi knew, or had reasonable grounds to know, that the 695 View was being used as the image for the Infringing T-Shirt and that it bore a copyright notice.  Tellingly, the image on the Infringing T-Shirt is cropped on the right and in such a manner so to remove RTSI's copyright management material. (*See* Trial Ex. 34.)

G. <u>RTSI Is Entitled to Statutory Damages for Removing or Altering Copyright Management Material</u>

Section 1203(c)(3) of the Copyright Act allows a plaintiff to recover statutory damages for violating section 1202 in an amount not less than $2,500 or more than $25,000.  17 U.S.C. § 1203(c)(3).   Courts regularly look to case law governing Section 504(c) for guidance in calculating an award.  *See* Howard B. Abrams, 2 THE LAW OF COPYRIGHT § 17:62 (West: 2005) ("Although there have been no judicial precedents as yet about the award of statutory damages under the provisions of section 1203, it seems quite reasonable to assume that the precedents concerning statutory damages under section 504(c) of the Copyright Act are highly persuasive if not determinative").  And, where a defendant's acts were willful, an enhancement of damages is appropriate.  *See Sony Computer Entm't. Am., Inc. v. Filipiak*, 406 F. Supp. 2d 1068, 1074 (N.D. Cal. 2005).

The evidence at trial demonstrated that Mungchi knew, or had reasonable grounds to know, that the copyright management information was removed from the 695 View without RTSI's permission and used as the image on the Infringing T-Shirt, and that Mungchi helped to induce, enable, facilitate or conceal the infringement.  Moreover, Mungchi profited from the sale of almost 200 Infringing T-Shirts.  The Court therefore finds that an award of the maximum statutory damage of $25,000 is appropriate.

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104685-001

H.   RTSI's Unfair Competition under the Lanham Act Claim

The Ninth Circuit has repeatedly held that "[a] likelihood of confusion [in the marketplace] exists when consumers 'are likely to assume that a product or service is associated with a source other than its actual source . . . .'" *See Metro Publ'g Ltd. v. San Jose Mercury News*, 987 F.2d 637, 640 (9th Cir. 1993), *abrogated on other grounds* recognized by *Roe v. Anderson*, 134 F.3d 1400, 1402 n.1 (9th Cir. 1998). In determining the likelihood of consumer confusion, this Court considers the strength of RTSI's source indicator, the proximity or relatedness of the subject goods—i.e., souvenir products, evidence of actual confusion, the degree to which the marketing channels converge, the type of goods and degree of care consumers are likely to exercise in purchasing such goods, and the intent of Mungchi, among other factors. *See AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979). These factors are neither exhaustive nor exclusive, but are merely intended to guide the Court in assessing the basic question of likelihood of confusion. *Id.*

RTSI's 695 View is highly distinct and conveys a unique overall commercial impression from other images of the Las Vegas Strip. Because RTSI has been using its 695 View in commerce for almost two decades, and due to RTSI's long-term extensive use and marketing efforts, the Court finds that the 695 View has become well known among consumers as belonging to and originating from RTSI.

Mungchi's use of an image that is practically identical to RTSI's 695 View in connection with a Mungchi product bearing its CHELONA mark creates a "likelihood of confusion" among the consuming public as to the source of the goods, particularly given the fact the goods are identical to those offered by RTSI bearing the 695 View (e.g., t-shirts), traveling in the exact same marketing channels (i.e., souvenir shops and general retailers) and targeting the exact same consumers (e.g., tourists) as RTSI's goods.

Accordingly, the Court finds Mungchi has engaged in unfair competition under 15 U.S.C. § 1125(a) by distributing and selling the Infringing T-Shirt bearing an image practically identical to RTSI's 695 View in commerce. Due to Mungchi's wrongful conduct, the Court finds that RTSI has been damaged. In an attempt to compensate RTSI, the Court finds that RTSI is

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104685-001

19 of 22

1   entitled to damages in the amount of $1,350, which is the amount of Mungchi's total sales for the

2   Infringing T-Shirts ($1,930) minus its expenditures ($580).  (Trial Exs. 35-41.)

3         I.      <u>Mungchi and Top Design and Kyung Su Lee are Joint and Severally Liable</u>

4         The Ninth Circuit has expressly adopted the general rule that all participants in copyright

5   infringement are joint and severally liable as tortfeasors.  *Frank Music Corp. v. Metro-Goldwyn-*

6   *Mayer, Inc.*, 772 F.2d 505, 519 (9th Cir. 1985) (citing *MCA, Inc. v. Wilson*, 677 F.2d 180, 186

7   (2d Cir.1981) ("When a copyright is infringed, all infringers are jointly and severally liable for

8   plaintiffs' actual [and statutory] damages.").  So long as the participants acted in concert in

9   infringing the copyright (e.g., were involved in the selection, manufacture, distribution and sale

10   of the infringing action), they are jointly and severally liable.  *Id. See also Range Rd. Music, Inc.*

11   *v. E. Coast Foods, Inc.*, 668 F.3d 1148, 1155 (9th Cir.2012) (affirming district court joint and

12   several statutory damage award against all defendants for copyright infringement)

13         Here, Mungchi and Top Design acted in concert, as they both participated in, exercised

14   control over, and benefited from the infringement of RTSI's 695 View.  As such, the Court finds

15   that they are to be held joint and severally liable for RTSI's damages. This Court has already

16   determined, as a matter of law, that Top Design is liable for willful copyright infringement,

17   removal of copyright management material, and for attorney's fees and costs, damages

18   amounting to a total of $72,600.  (*See* Doc. 73 at 3:3-14.)  Accordingly, RTSI shall be entitled to

19   obtain from Mungchi the full combined amount levied against both Top Design and Mungchi.

20   *See Range Rd. Music, Inc.*, 668 F.3d at 1155.

21         J.      <u>RTSI Is Entitled to a Permanent Injunction</u>

22         The Copyright Act provides that defendants are properly permanently enjoined from

23   further engaging in infringing activity.  *See MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d

24   511, 520 (9th Cir. 1993).  As such, RTSI is entitled to a permanent injunction to prevent

25   Mungchi from copying, manipulating, reproducing, distributing, selling or displaying RTSI's

26   695 View or derivatives thereof, including, but not limited to, the Infringing T-Shirt. *See* 17

27   U.S.C. § 502(a).

28   / / /

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104685-001

20 of 22

K.      RTSI Is Entitled to Attorney's Fees and Costs

The Copyright Act allows for recovery of full costs, which includes attorneys' fees, by the prevailing party.  17 U.S.C. §§ 505 & 1203(b).  As the "prevailing party" in this action, RTSI shall be entitled to recover its reasonable fees under 17 U.S.C. §§ 505 & 1203(b), and may submit a brief in support of the same in compliance with LR 54-16.

## ORDER

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Defendant Mungchi, Inc. is liable for willful copyright infringement and removal of copyright management information under the Copyright Act, as well as unfair competition under the Lanham Act.

IT IS FURTHER ORDERED Plaintiff Reno-Tahoe Specialty, Inc. is awarded its statutory damages against Defendant Mungchi, Inc. in the amount of $150,000.00, as to the copyright infringement claim; $25,000.00, as to the removal of its copyright management information claim; $1,350.00, as to its unfair competition under the Lanham Act claim.

IT IS FURTHER ORDERED that Mungchi be joint and severally liable with both Top Design and Kyung Su Lee and for the judgment entered against them in the amount of $72,600.00.

IT IS FURTHER ORDERED that Mungchi is permanently enjoined from

a.      Reproducing RTSI's copyrighted pictorial works and/or the Infringing Works as defined in RTSI's Complaint in this action;

b.      Preparing derivative works based upon RTSI's copyrighted works and/or the Infringing Works;

c.      Distributing to the public, by sale or other transfer of ownership, or by rental, lease or lending, any of the copyrighted works of RTSI and/or the Infringing Works;

d.      Publicly displaying RTSI's copyrighted works and/or the Infringing Works;

e.      Manufacturing new items based upon RTSI's copyrighted works, the Infringing Works, or any derivative works of either RTSI's copyrighted works and/or the

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104685-001

21 of 22

Infringing Works;

        f.      Selling any items that infringe upon RTSI's copyrighted works and/or that contain the Infringing Works; and/or

        g.      Authorizing any third parties to do any of the above acts.

IT IS FURTHER ORDERED attorney fees and costs are to be awarded to the Plaintiff, subject to reasonableness and a timely submission in compliance with LR 54-16.

**IT IS SO ORDERED** this 19th day of December, 2014.

_____
Gloria M. Navarro, Chief Judge
United States District Court

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104685-001